Matter of Tony S.H. (Katrina F.) (2021 NY Slip Op 06238)





Matter of Tony S.H. (Katrina F.)


2021 NY Slip Op 06238


Decided on November 12, 2021


Appellate Division, Fourth Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on November 12, 2021
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Fourth Judicial Department

PRESENT: SMITH, J.P., PERADOTTO, CURRAN, BANNISTER, AND DEJOSEPH, JJ.


752 CAF 20-00300

[*1]IN THE MATTER OF TONY S.H., JR. NEW HOPE FAMILY SERVICES, PETITIONER-RESPONDENT; KATRINA F., RESPONDENT-APPELLANT, STACIE P. AND BEN P., RESPONDENTS.






THEODORE W. STENUF, MINOA, FOR RESPONDENT-APPELLANT.
HARRIGAN & DOLAN, SYRACUSE, D.J. & J.A. CIRANDO, PLLC (JOHN A. CIRANDO OF COUNSEL), FOR PETITIONER-RESPONDENT.
STUART J. LAROSE, SYRACUSE, ATTORNEY FOR THE CHILD. 


 Appeal from an order of the Family Court, Onondaga County (Michael L. Hanuszczak, J.), entered January 13, 2020 in a proceeding pursuant to Social Services Law § 383-c. The order, insofar as appealed from, granted the petition for approval of respondent Katrina F.'s extra-judicial surrender of the subject child. 
It is hereby ORDERED that the order insofar as appealed from is unanimously reversed on the law without costs, the petition is denied, and the motion is granted.
Memorandum: In this guardianship and custody proceeding pursuant to Social Services Law § 383-c, respondent Katrina F. (birth mother) appeals from an order that, inter alia, granted the petition of petitioner, New Hope Family Services (New Hope), for approval of the birth mother's extra-judicial surrender of the subject child and adjudged that it was in the child's best interests to be adopted by Stacie P. and Ben P. (respondents). The appeal from that final order brings up for review an earlier intermediate order that denied the birth mother's motion to vacate her surrender (see Matter of Cheyenne C. [James M.], 185 AD3d 1517, 1518 [4th Dept 2020], lv denied 35 NY3d 917 [2020]; see generally CPLR 5501 [a] [1]; Family Ct Act § 1118; Matter of Alyssa L. [Deborah K.], 93 AD3d 1083, 1084 [3d Dept 2012]). We agree with the birth mother that reversal of the final order insofar as appealed from is required.
The birth mother contacted New Hope just prior to the child's birth explaining her desire to place the child for adoption, and she was adamant that the adoption plan be made through that authorized agency because she was unhappy with the Onondaga County Department of Children and Family Services, which had been involved in parental termination proceedings with respect to the birth mother's five other children. At the hospital a couple days after the child's birth, the birth mother executed a voluntary placement agreement in which she agreed to place the child in New Hope's foster care program. The child was discharged from the hospital the next day and placed in that program. A week later, after having selected respondents as the prospective adoptive parents, the birth mother signed the subject extra-judicial surrender in the presence of witnesses. The child was placed with respondents the following day.
Within 15 days of its execution, New Hope filed a petition seeking approval of the extra-judicial surrender. However, in an affidavit received by the appropriate Family Court part less than 45 days after executing the surrender, the birth mother sought to revoke it. The birth mother thereafter moved for an order pursuant to Social Services Law § 383-c (6) (a) deeming the surrender a nullity and returning the child to the care and custody of the authorized agency. The court refused to deem the surrender a nullity, denied the birth mother's motion, and instead determined that a best interests hearing was required. Following the best interests hearing, the court, among other things, granted New Hope's petition approving the birth mother's surrender.
"In the context of agency adoptions, Social Services Law § 383-c . . . provides that biological parents willing to give their child up for adoption must execute a written instrument, known as a 'surrender' " (Matter of Jacob, 86 NY2d 651, 664 [1995]; see § 383-c [1]). In that regard, "[s]ection 383-c provides that a birth parent may relinquish parental rights to an infant by signing either a judicial surrender or an extra-judicial surrender" (Joseph R. Carrieri, Practice Commentaries, McKinney's Cons Laws of NY, Book 52A, Social Services Law § 383-c). A judicial surrender is executed and acknowledged before a judge and becomes final and irrevocable immediately upon its execution and acknowledgment (see § 383-c [3] [a], [b]; [5] [c]).
An extra-judicial surrender, by contrast, is executed and acknowledged by the birth parent not before a judge, but rather in the presence of witnesses with certain qualifications and a notary public (see Social Services Law § 383-c [4] [a]). Within 15 days of such execution, the authorized agency to which the child was surrendered must file an application with the court for approval of the extra-judicial surrender (see § 383-c [4] [b]). The court thereafter must enter an order either approving or disapproving the extra-judicial surrender and, if the court disapproves it, the extra-judicial surrender is deemed a nullity and without force or effect (see § 383-c [4] [f]). As relevant here, the statute also allows the birth parent to revoke an extra-judicial surrender within a specified period: "[I]f a revocation of an extra-judicial surrender is mailed and postmarked or otherwise delivered to the court named in the surrender within [45] days of the execution of the surrender, such surrender shall be deemed a nullity, and the child shall be returned to the care and custody of the authorized agency" (§ 383-c [6] [a]).
Here, it is undisputed that the birth mother timely revoked her extra-judicial surrender within the required 45-day period. Nonetheless, despite the arguments to the contrary raised by the birth mother in her moving papers and during a subsequent appearance, the court initially determined that a best interests hearing was required by Social Services Law § 383-c and later reasoned that the situation was "no different than a private placement adoption" and, thus, Domestic Relations Law § 115-b applied, which required a best interests hearing following the revocation. Those determinations constitute error.
First, as the birth mother correctly contended, the plain language of Social Services Law § 383-c (6) (a) mandates that a timely revocation shall render the extra-judicial surrender a nullity and that the child shall be returned to the care and custody of the authorized agency, and the statute contains no language providing for a best interests hearing in the event of such a timely revocation (see generally Matter of Janus Petroleum v New York State Tax Appeals Trib., 180 AD2d 53, 54 [3d Dept 1992]; McKinney's Cons Laws of NY, Book 1, Statutes § 177).
Second, as the birth mother also correctly argued, the court erroneously determined that the agency adoption here as governed by Social Services Law § 383-c was indistinguishable from a private placement adoption as governed by Domestic Relations Law § 115-b. A private placement adoption is a separate category of adoption that requires birth parents willing to place their child for adoption to execute a written document known as a "consent," which may be judicial or extra-judicial (see Domestic Relations Law § 115-b; Jacob, 86 NY2d at 664). Like an extra-judicial surrender (see Social Services Law
§ 383-c [6] [a]), an extra-judicial consent may be revoked by the birth parent via written notice received by the court within 45 days (see Domestic Relations Law § 115-b [3] [a]). There is, however, a critical difference between the statutes regarding the consequences that flow from a timely revocation. With respect to the revocation of an extra-judicial consent by written notice, Domestic Relations Law
§ 115-b (3) (b) provides that, "[n]otwithstanding that such written notice is received within said [45] days, the notice of revocation shall be given effect only if the adoptive parents fail to oppose such revocation . . . or, if they oppose such revocation and the court . . . has determined that the best interests of the child will be served by giving force and effect to such revocation." Where the adoptive parents in a private placement adoption oppose the birth parents' timely and proper revocation of consent, the court must hold a best interests hearing to determine what disposition should be made with respect to the custody of the child (see Domestic Relations Law
§ 115-b [6] [d]; see e.g. Matter of Collin, 92 AD3d 1283, 1284 [4th Dept 2012]; Matter of Gabriela, 273 AD2d 940, 940 [4th Dept 2000]). The statute governing revocations of extra-judicial surrenders in agency adoptions, by contrast, does not provide for a best interests hearing (see Social Services Law § 383-c [6]). In sum, "while an attempted revocation of an [*2]extra-judicial adoption consent may lead to [a] hearing on whether revocation is in the child's best interest, revocation of an extra-judicial surrender is automatic and requires that the child be returned to the care and custody of the authorized agency" (Alan D. Scheinkman, Practice Commentaries, McKinney's Cons Laws of NY, Book 14, Domestic Relations Law C111:5 [emphasis added]). Thus, the court here had no statutory basis for refusing to deem the surrender a nullity, denying the birth mother's motion, and instead conducting a best interests hearing.
New Hope and the Attorney for the Child nonetheless contend that the court had a contractual basis for conducting a best interests hearing because the language of the surrender indicated that such a hearing might be required upon the birth mother's timely revocation. That contention lacks merit. Social Services Law § 383-c (5)—which sets forth the required form of surrenders—provides, in pertinent part, that an extra-judicial surrender instrument must state in plain language in conspicuous bold print at the beginning thereof that "a revocation of the surrender will be effective if it is in writing and postmarked or received by the court named in the surrender within [45] days of the signing of the surrender" (§ 383-c [5] [d] [ii]). Consistent with that part of the statute governing the effect of a timely revocation of an extra-judicial surrender (see § 383-c [6] [a]), the mandated language in a proper extra-judicial surrender form does not provide that a revocation is effective only upon a determination after a best interests hearing (see § 383-c [5] [d] [ii]). As the birth mother correctly contended in her motion papers, New Hope nonetheless deviated from the statute by inserting language in the surrender indicating that, even if the birth mother attempted to revoke the surrender within 45 days, a best interests hearing may be required. Inasmuch as that language contravenes the governing statute, we conclude that it does not provide a valid basis for the court's refusal to give effect to the birth mother's timely revocation.
Based on the foregoing, because it is undisputed that the birth mother timely revoked the extra-judicial surrender (see Social Services Law § 383-c [6] [a]), we conclude that the court erred in refusing to deem the surrender a nullity, denying the birth mother's motion seeking that relief, and granting New Hope's petition seeking approval of the surrender.
With respect to the appropriate remedy, inasmuch as the timely revocation renders the extra-judicial surrender a nullity (see Social Services Law § 383-c [6] [a]), such revocation "restores the parties to their original positions" prior to the surrender (Matter of L.S. [Diana A.], 195 AD3d 1, 10 [1st Dept 2021]; see Matter of Bentley XX. [Eric XX.], 121 AD3d 209, 214-215 [3d Dept 2014]; Matter of Christopher F., 260 AD2d 97, 100 [3d Dept 1999]). Here, prior to executing the surrender, the birth mother voluntarily agreed to place the child in New Hope's foster care program. Thus, consistent with that agreement and the statutory effect of the revocation (see § 383-c [6] [a]), the child should remain in the care and custody of New Hope, with physical placement of the child remaining with respondents pending further proceedings. We note that the right of any appropriate party to pursue a proceeding seeking termination of the birth mother's parental rights "is unimpaired by the revocation of the surrender" (Christopher F., 260 AD2d at 101; see Bentley XX., 121 AD3d at 214-215).
Entered: November 12, 2021
Ann Dillon Flynn
Clerk of the Court